UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
WILLIAM W. BUCHER IV, and BUCHER :
LAW PLLC,                        :
                                 :
         Plaintiffs,             :
v.                               :
                                 :  Civil No. 3:23-cv-452 (AWT)
ZAIGER LLC, JEFFREY H. ZAIGER,   :
BLACK DIAMOND CAPITAL            :
MANAGEMENT, LLC, and STEPHEN     :
DECKOFF,                         :
                                 :
         Defendants.             :
------------------------------ x
```

## RULING ON MOTION TO DISMISS

Plaintiffs William W. Bucher IV ("Bucher") and Bucher Law PLLC ("Bucher Law") bring a thirteen-count complaint against defendants Zaiger LLC, a law firm; Jeffrey H. Zaiger ("Zaiger"), a lawyer at Zaiger LLC; Black Diamond Capital Management, LLC ("Black Diamond"); and Black Diamond's Chief Executive Officer, Stephen Deckoff ("Deckoff").

The Second Amended Complaint has the following claims: First Count, a claim for breach of contract by Bucher against Zaiger LLC; Second Count, a claim by Bucher against Black Diamond and Deckoff (the "Black Diamond Defendants") for intentional interference with contractual relations; Third Count, a claim by Bucher against Zaiger and Zaiger LLC (the "Zaiger Defendants") for breach of contract; Fourth Count, a

claim by Bucher against the Black Diamond Defendants for intentional interference with contractual relations; Fifth Count, a claim by Bucher against the Black Diamond Defendants for tortious interference with business expectancies; Sixth Count, a claim by Bucher and Bucher Law against the Zaiger Defendants for violation of 15 U.S.C. § 1125(a); Seventh Count, a claim by Bucher and Bucher Law against the Zaiger Defendants for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.; Eighth Count, a claim by Bucher against Zaiger LLC for wrongful termination of his employment in violation of public policy; Ninth Count, a claim by Bucher against the Zaiger Defendants for invasion of Bucher's right of publicity; Tenth Count, a claim by Bucher and Bucher Law against the Zaiger Defendants for violation of 15 U.S.C. § 1125(a); Eleventh Count, a claim by Bucher and Bucher Law against the Zaiger Defendants for violation of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a et seq.; Twelfth Count, a claim by Bucher and Bucher Law against the Black Diamond Defendants for violation of 15 U.S.C. § 1125(a); and Thirteenth Count, a claim by Bucher and Bucher Law against the Zaiger Defendants for breach of contract and breach of the covenant of good faith and fair dealing.

For the reasons set forth below, the Sixth, Tenth, and Twelfth Counts, i.e., all the claims under federal law, are

being dismissed, and pursuant to 28 U.S.C. § 1367(a), the court declines to exercise supplemental jurisdiction over the remaining claims.

## I. FACTUAL ALLEGATIONS AND BACKGROUND

### A. <u>Bucher's Employment by Zaiger LLC</u>

In January 2022, Bucher and Zaiger discussed the prospect of Zaiger LLC hiring Bucher to "build a mass arbitration practice," an area in which Bucher had prior experience, at Zaiger LLC. Second Am. Compl. ¶ 31. "This represented a paradigm shift for Zaiger LLC. Zaiger LLC would go from serving the interests of only one client, Black Diamond, to taking on tens of thousands of additional consumer clients, to whom it would owe duties co-equal to those it owed Black Diamond." <u>Id.</u> ¶ 32. "Jeff Zaiger suggested that maybe Black Diamond could provide at least seed funding for the new mass arbitration practice and perhaps broader funding for specific mass arbitration strategies." <u>Id.</u> ¶ 34. Bucher "found the prospect of partnering with Zaiger LLC and Jeff Zaiger attractive" as doing so would provide Bucher with a "platform with infrastructure through which Bucher could launch his mass arbitration practice," as well as a "base salary." <u>Id.</u> ¶ 35.

In April 2022, Zaiger, Bucher, and a representative of Black Diamond met "to discuss the mass arbitration strategy and Bucher joining Zaiger LLC to lead [such a practice]." <u>Id.</u> ¶ 37.

In June 2022, Bucher gave a presentation to Zaiger LLC and Black Diamond regarding a set of potential mass arbitration cases that Zaiger LLC could bring, with Bucher's help, against Valve Corporation ("Valve"), regarding Valve's alleged use of "anti-competitive pricing restraints" in its video game distribution service, Steam (the "Steam Mass Arbitration"). Id. ¶ 39.

On July 26, 2022, Zaiger sent Bucher an employment offer, which provided that Bucher "was being hired to 'lead the Firm's development and pursuit of mass arbitration strategies.'" Id. ¶ 42. On July 27, 2022, Zaiger LLC and Bucher executed an agreement, which provided that "if the Firm terminates [Bucher's] employment, without cause, [Bucher] will be entitled to compensation . . . for services rendered and work performed on cases pursued pursuant to the [mass arbitration strategies] while employed, on a quantum meruit basis, even if applicable revenue is received from such cases after termination." Id. ¶ 48. Bucher's employment with Zaiger LLC began on August 15, 2022. The next day, Black Diamond and Zaiger LLC executed a contract obligating Black Diamond to provide $500,000 in seed funding to Zaiger LLC for the mass arbitration practice.

In the weeks that followed, Bucher launched a website "dedicated to recruiting clients to participate in the Steam Mass Arbitration against Valve," an advertising campaign to recruit clients, and a semi-automated system that integrated the

-4-

recruitment campaign with client management software. Id. ¶ 54.
That system could log information on, communicate with, assess
the eligibility of, and eventually retain potential clients,
while also allowing Zaiger LLC's employees to manually
communicate with clients where necessary. The system also
allowed clients to "receive updates and view their documents
through a web portal enabling confidential communications to be
delivered securely." Id. ¶ 61.

    The website that was set up by Bucher and provided
information about the Steam Mass Arbitration, steamclaims.com,
stated:

> Jeffrey Zaiger, nine-time "Super Lawyer" and "New York
> Rising Star," has teamed up with Will Bucher, chair of the
> American Bar Association's Digital Games and New Media
> Committee and Video Game Bar Association member to bring
> these antitrust claims against Valve. Together, we will
> negotiate, and if necessary litigate, your claim.

Id. ¶ 73. "The website upon which clients completed claims forms
contained a 90-second video, including only Bucher, and no other
attorney, where Bucher explained the legal merits of
the case against Valve." Id. ¶ 74. "Every single eligible client
received an email from 'William Ward Bucher IV' noting that he
was 'Admitted to Practice in New York' inviting them to 'review
and sign our retainer agreement' and noting 'Once you sign the
retainer agreement, we can get started on your claim and
obtaining compensation for you.' No other attorneys were

mentioned in this email." Id. ¶ 75. "Bucher was specifically named in the retainer agreement that clients received." Id. ¶ 76.

"By the end of November 2022, less than three months after Bucher began his employment, Bucher's advertising campaign had recruited over 20,000 Steam Mass Arbitration clients to bring arbitrations against Valve." Id. ¶ 65.

### B. Dispute over Funding

In October 2022, Zaiger "revealed to Bucher that Black Diamond . . . had not been disbursing funds under the Seed Funding Agreement and that [Zaiger] ha[d] been paying costs from his own funds." Id. ¶ 86. The same month, the parties began negotiations to establish a second funding agreement. Deckoff, however, refused to sign the draft agreement proposed by Bucher and Zaiger. In November 2022, Zaiger reached out to other funders in case Black Diamond refused to fund the mass arbitration practice.

Meanwhile, on October 28, 2022, Zaiger LLC and Bucher entered into a partnership and compensation agreement, which provided that the parties "intend compensation in the partnership to reflect that in Bucher's current employment agreement." Id. ¶ 91. The agreement specified that Zaiger and Zaiger LLC "commit to compensate Bucher, regardless of employment status, with a payout or percentage of any recovery

from the [mass arbitration] Strategies equal to any percentage, payout, or allocation due to Jeffrey Zaiger from the Strategies, or one-half the profit earned by [Zaiger] LLC from the Strategies, whichever is greater." Id. ¶ 92. See Pl. Ex. B (ECF No. 54) at 77.

At a meeting in January 2023 attended by Bucher, Zaiger, and several representatives from Black Diamond, Deckoff "proposed taking an equity interest" in the mass arbitration case against Valve, equal to 60 percent of the fees to be collected. Second Am. Compl. ¶ 106. Also, Deckoff conditioned funding on "Zaiger LLC agreeing, in advance, to drop the mass arbitrations and abandon the Steam Mass Arbitration clients if Valve does not immediately settle the case upon notice that the Steam Mass Arbitration clients have paid their filing fees and if, instead, Valve . . . prepares to defend the individual arbitrations on the merits." Id. ¶ 107. Bucher expressed his belief that such conditions "posed serious ethical concerns," because lawyers can neither "abandon" their clients nor "take on cases they ha[ve] no intention of pursuing." Id. ¶ 108. "Jeff Zaiger agreed and stated that he was 'a lawyer, not a snake oil salesman' and that he could not ethically take on cases he was unwilling to actually litigate." Id. ¶ 109. Deckoff encouraged Bucher and Zaiger to "forget about" their "ethical obligations." Id. ¶ 110. Bucher suggested a "non-recourse, high interest loan"

as an alternative mode of funding, which Deckoff rejected. Id. ¶ 115.

The same month, Zaiger LLC obtained "three term sheets from potential funders other than Black Diamond," and used those offers to negotiate again with Black Diamond. Id. ¶ 120. When Zaiger LLC did not receive a response from Black Diamond, Zaiger LLC executed an agreement on January 23, 2023 with an alternative funder.

On February 7, 2023, Black Diamond's Chief Operating Officer learned about the alternative funding agreement, became incensed, and stated he would "'withdraw all Black Diamond's work from the firm.'" Id. ¶ 130. Thereafter, representatives of Black Diamond "repeatedly demanded" that Zaiger LLC terminate Bucher's employment. Id. ¶ 131.

## C. **Termination of Bucher's Employment**

On February 29, 2023, Zaiger met with representatives of Black Diamond to discuss the future of the mass arbitration practice. Throughout the day, Zaiger sent text messages to Bucher stating that Zaiger was "losing [his] mind" and "fighting for [his] life today." Id. ¶ 177. That afternoon, Bucher unsuccessfully attempted to download a list of clients and their information from the mass arbitration practice's client management system. Bucher then "adjusted" Zaiger's "administrative privileges on the . . . software platform to

prevent [Zaiger] from taking any massive and irreversible actions," such as "terminating all clients or deleting all data," without "a cooling off period." Id. ¶¶ 183-185. Zaiger discovered the system changes that evening and confronted Bucher.

On March 1, 2023, Zaiger delivered a letter to Bucher informing Bucher that his employment was terminated "for cause" based on Bucher's "efforts to download" client information and edit Zaiger's system privileges. Id. ¶ 210. Several hours later, Bucher provided Zaiger LLC with the administrative passwords needed to regain access to the client management system.

### D. Post-Termination Events

After Bucher's employment was terminated, Zaiger LLC "continued to run video advertisements on YouTube and Instagram featuring Bucher, representing that he was a lawyer at Zaiger LLC, and inviting potential clients to see if they were eligible to file a claim." Id. ¶ 216. For "days following Bucher's departure," references to Bucher remained on the homepage of the website for the Steam Mass Arbitration. Id. ¶ 217. For "weeks following Bucher's departure, subdomains of steamclaims.com continued to feature photos of Bucher and a video of Bucher explaining the legal merits of the Valve case" and "continued to note" that Zaiger "has teamed up with Bucher, chair of the American Bar Association's Digital Games and New Media Committee

and Video Game Bar Association member, to bring these antitrust claims against Valve," and that "[t]ogether, we will negotiate, and if necessary litigate, your claim." Id. ¶¶ 218-19. Potential clients who interacted with the Steam Mass Arbitration's advertising campaign were redirected to those subdomains. Until March 23, 2023, potential clients who interacted with the integrated client retention system received email communications that featured Bucher's signature block or text messages that featured Bucher's name.

"While Bucher was under the impression that Zaiger LLC was considering a co-counsel relationship, on March 25, 2023, Zaiger LLC unilaterally sent an email to clients informing them that Bucher was no longer representing them." Id. ¶ 233. "The communication included no information on how to contact Bucher, his new firm, his willingness to continue to represent the clients, or their right to make a choice as to whom to retain as counsel." Id. ¶ 234. "The communication also stated that Zaiger LLC had arranged to work with a new firm that 'will be acting as co-counsel with Zaiger LLC to assist in the prosecution of your claims against Valve!'" Id. ¶ 235. "Further, the communication stated that 'Zaiger LLC and our co-counsel . . . will vigorously pursue your interests against Valve!'" Id. ¶ 236.

On March 28, 2023, Bucher formed Bucher Law. Bucher attempted to use an outdated client list to "provide his clients

notice of his departure [so they could] make an informed choice about whether to keep Bucher as their lead counsel, stay with Zaiger LLC, or choose new counsel entirely." Id. ¶ 240. However, that list was missing information about 14,000 clients.

On April 10, 2023, the plaintiffs filed the instant action. On April 14, 2023, Bucher sent to Zaiger LLC a list of 9,000 clients who had sent him written instructions that Bucher should represent them going forward. Bucher requested the files for those clients. Zaiger LLC initially declined, but on April 28, 2023, Zaiger LLC transferred "90% of the files in question." Id. ¶ 251. On May 18, 2023, Zaiger LLC transferred remainder of the files.

Meanwhile, on May 8, 2023, the plaintiffs and the Zaiger Defendants agreed to send a joint communication to 14,000 clients who had neither been notified of Bucher's departure nor provided with a way to retain Bucher Law. See Pl. Ex. C (ECF No. 54) at 80-82.

## II. LEGAL STANDARD

When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds'

-11-

of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). On a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (internal citations and quotations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id.

In its review of a motion to dismiss for failure to state a claim, the court may consider "only the facts alleged in the

pleadings, documents attached as exhibits or incorporated by reference in the pleadings and matters of which judicial notice may be taken." Samuels v. Air Transport Local 504, 992 F.2d 12, 15 (2d Cir. 1993).

## III. DISCUSSION

The only claims in the Second Amended Complaint brought under federal law are the claims under the Lanham Act in the Sixth, Tenth, and Twelfth Counts. The court concludes that the factual allegations in those counts are insufficient to survive the defendants' motions to dismiss and, consequently, dismisses them and declines to exercise supplemental jurisdiction over the state law claims.

### A. Claims under the Lanham Act

Section 43(a) of the Lanham Act provides in relevant part that:

> Any person who, on or in connection with any goods or services, . . . uses in commerce . . . any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1). Section 43(a) "principally provides for two distinct causes of action: false designation of origin or source, known as 'product infringement,' and false description

or representation, known as 'false advertising.'" <u>Res. Devs.,
Inc. v. Statue of Liberty-Ellis Island Found., Inc.</u>, 926 F.2d
134, 139 (2d Cir. 1991) (quoting <u>Johnson & Johnson v. Carter-
Wallace, Inc.</u>, 631 F.2d 186, 187-88 n.1 (2d Cir. 1980)). The
claims here are for false advertising.[1]

 "To prevail on a Lanham Act false advertising claim, a
plaintiff must establish that the challenged message is (1)
either literally or impliedly false, (2) material, (3) placed in
interstate commerce, and (4) the cause of actual or likely
injury to the plaintiff." <u>Church & Dwight Co. v. SPD Swiss
Precision Diagnostics, GmBH</u>, 843 F.3d 48, 65 (2d Cir. 2016). A
plaintiff must also demonstrate that the defendant's statements
constituted "commercial speech." <u>Fashion Boutique of Short</u>

---

[1] In the Sixth, Tenth, and Twelfth Counts, the Second
Amended Complaint refers to unfair competition and false
advertising in violation of 15 U.S.C. § 1125(a). To the extent
the plaintiffs attempt to assert an unfair competition claim
independently of their false advertising claim, they cannot do
so. "'[T]here is no specific Federal cause of action for unfair
competition. Instead unfair competition under the Lanham Act[,
15 U.S.C. 1125(a),] is a category of claims consisting primarily
of causes of action for false designation of origin and false
advertising.'" <u>Sussman-Automatic Corp. v. Spa World Corp.</u>, 15 F.
Supp. 3d 258, 272 (E.D.N.Y. 2014) (citation omitted). <u>See</u>
McCarthy on Trademarks and Unfair Competition § 27:9 (5th ed.
2024) (describing how 15 U.S.C. § 1125(a) "gradually developed
through judicial construction into the foremost federal vehicle
for the assertion of two major and distinct types of 'unfair
competition': (1) infringement of even unregistered marks, names
and trade dress, and (2) 'false advertising.'"). The Second
Amended Complaint contains no allegations from which the court
could reasonably infer a violation of 15 U.S.C. § 1125(a) based
trademark infringement.

*Hills, Inc. v. Fendi USA, Inc.*, 314 F.3d 48, 57 (2d Cir. 2002). Thus, the plaintiffs must show that the statements in question were "'for the purpose of influencing consumers to buy [the] defendant's goods or services; and . . . disseminated sufficiently to the relevant purchasing public.'" *Boule v. Hutton*, 328 F.3d 84, 90-91 (2d Cir. 2003) (quoting *Fashion Boutique of Short Hills, Inc.*, 314 F.3d at 56-57). In *Lexmark, Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 131-32 (2014), the Supreme Court held that "to come within the zone of interest in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."

## 1. **Sixth Count**

In the Sixth Count, the plaintiffs assert a claim against the Zaiger Defendants for violation of 15 U.S.C. § 1125(a). The plaintiffs claim that:

> Zaiger LLC and Jeff Zaiger's actions described above and specifically, without limitation, their continued use of Bucher's likeness and explicit reference to Bucher in advertising to recruit new mass arbitration clients even after Bucher's termination, their refusal to provide Bucher a list of Steam Mass Arbitration clients that Bucher represented at the time he was employed by Zaiger LLC, and their failure to provide the Steam Mass Arbitration clients with sufficient information to make an informed choice of counsel, including the misleading unilateral communication sent by Zaiger LLC and Jeff Zaiger on March 25, 2023, constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).

Second Am. Compl. ¶ 321.

There are three bases for the claim set forth in the Sixth
Count. The first basis is the continued use by the Zaiger
Defendants of Bucher's likeness and explicit reference to Bucher
by them in advertising to recruit new mass arbitration clients
after Bucher's termination. The Zaiger Defendants contend that
the plaintiffs have failed to state a claim on the basis of this
factual allegation for two reasons.

First, the Zaiger Defendants contend that there is "no
deception alleged", i.e., that the factual allegations do not
establish the first element of a false advertising claim under
the Lanham Act, namely, that the challenged message is either
literally or impliedly false. See Zaiger Defs. Mem. in Support
of Mot. to Dismiss (ECF No. 60) ("Zaiger Defs. Memorandum") at
27. The Zaiger Defendants argue that "Bucher alleges that
references to Bucher on the steamclaims.com website 'misled
[potential clients] into believing that Bucher would be handling
their case.'" Id. There is no citation to the Second Amended
Complaint, but it appears this is a reference to paragraph 224,
which alleges that "after Bucher's departure, potential clients
who clicked on an advertisement on Google or displayed through
Zaiger LLC's marketing firm were led to a page that misled them
into believing that Bucher would be handling their case." Second
Am. Compl. ¶ 224. Taking into account the other paragraphs of
the Second Amended Complaint on which the plaintiffs rely, see

Pls. Mem. in Support of Opp. to the Zaiger Defs. Motion to
Dismiss (ECF No. 67) ("Pls. Opposition to Zaiger Defs.") at 14
(citing Second Am. Compl. ¶¶ 69-84), and drawing all reasonable
inferences in favor of the plaintiffs, the Second Amended
Complaint has adequately alleged that the challenged message was
impliedly false.

Second, the Zaiger Defendants contend that the Second
Amended Complaint fails to allege facts that would establish the
fourth element of such a claim, i.e., that the challenged
message was the cause of actual or likely injury to the
plaintiffs. See Zaiger Defs. Memorandum at 28-29. The Zaiger
Defendants argue that the "Lanham Act claim fails because Bucher
does not allege that even a single potential client would have
retained Bucher Law but for the references to Bucher on Zaiger
LLC's websites." Id. at 28 (emphasis removed). The plaintiffs
argue, in their opposition, that "[t]hese false and misleading
statements prevented the potential clients from making an
informed choice of counsel between Bucher Law and Zaiger LLC
because they would believe that they were still represented by
Bucher." Pls. Opposition to Zaiger Defs. at 22. The plaintiffs
cite to no factual allegation in the Second Amended Complaint in
support of this argument.

In Paragraph 214, the Second Amended Complaint alleges, as
pointed out by the Zaiger Defendants, that "Bucher did not form

Bucher Law until four weeks after his termination, on March 28, 2023." Zaiger Defs. Memorandum at 28 (citing Defs. Ex. 6 (ECF No. 60-6) at 2). The plaintiffs allege that "[i]t took days following Bucher's departure before references to Bucher were removed from the steamclaims.com homepage, which is what a user sees if they directly go to the website created to recruit clients." Second Am. Compl. ¶ 217. The plaintiffs also allege that "[u]ntil at least March 23, 2023, three weeks following Bucher's termination, that reminder text message stated 'Hey [client name], its Will from Zaiger LLC. We'd love to get you compensated, but we need a signed retainer agreement to get started.'" Id. ¶ 230. They further allege that "even once references were removed from the homepage, for weeks following Bucher's departure, subdomains of steamclaims.com continued to feature photos of Bucher and a video of Bucher explaining the legal merits of the Valve case." Id. ¶ 218. The paragraph following contains another reference to "for weeks." Id. ¶ 219. Taken together, these factual allegations do not suggest that the occurrences referred to in paragraphs 218 and 219 of the Second Amended Complaint continued to or past March 28, 2023. Nor do the plaintiffs argue in their opposition memoranda that any such occurrence continued to or past March 28, 2023.

In Lexmark Int'l, Inc., the Supreme Court held that "a plaintiff suing under § 1125(a) ordinarily must show economic or

reputational injury flowing directly from the deception wrought
by the defendant's advertising; and that that occurs when
deception of consumers causes them to withhold trade from the
plaintiff." 572 U.S. at 133. The factual allegations in the
Second Amended Complaint do not show, with respect to this basis
for the Sixth Count, that the alleged deception caused consumers
to withhold trade from Bucher Law. The Zaiger Defendants argue
that "in the short period that Zaiger LLC's 'subdomains' still
referred to Bucher, Bucher had not even set up his business. It
follows that potential clients could not withhold business from
him." Zaiger Defs. Memorandum at 28-29. Based on the factual
allegations in the Second Amended Complaint, even after drawing
reasonable inferences in the plaintiff's favor, the court
agrees.

The second basis for the false advertising claim in the
Sixth Count is the refusal by the Zaiger Defendants to provide
Bucher a list of the Steam Mass Arbitration clients represented
by Bucher while he was employed by Zaiger LLC. Section 43(a) of
the Lanham Act applies only in the context of "commercial
advertising or promotion." 15 U.S.C. § 1125(a). "The statute
does not define the phrase 'commercial advertising or
promotion.'" Fashion Boutique of Short Hills, Inc., 314 F.3d at
56. However, to fall within the scope of the statute, the
representations at issue must be "'commercial speech' that is

made for the purpose of influencing the purchasing decisions of the consuming public." Id. at 57. The Zaiger Defendants' refusal to provide Bucher with that list of Steam Mass Arbitration clients does not satisfy this requirement.

The third basis for the claim in the Sixth Count is the failure by the Zaiger Defendants "to provide the Steam Mass Arbitration clients with sufficient information to make an informed choice of counsel, including the misleading unilateral communication sent by Zaiger LLC and Jeff Zaiger on March 25, 2023." Second Am. Compl. ¶ 321.

In their opposition, the plaintiffs state:

> Zaiger LLC's March 25 email states that Bucher was no longer employed by Zaiger LLC and would no longer be representing the Steam mass arbitration clients but does not notify those clients that each of them have a right to choose between Bucher and Zaiger LLC to represent them moving forward. SAC ¶¶ 233-34. Nor does it disclose that Bucher is willing to represent them moving forward or provide them any information about how to contact Bucher or his new firm.

Pls. Opposition to Zaiger Defs. at 24. Based on the foregoing, the plaintiffs argue that "[b]y simply stating that Bucher was no longer with Zaiger LLC and then touting Zaiger LLC's plan to represent the clients moving forward, the statement created the misleading impression that Bucher was not willing to represent the clients and that the clients did not have the option to switch their representation to Bucher." Id. at 25 (citing N.Y. Comp. Codes R. & Regs. tit. 22, § 1200.0, Rule of Pro. Conduct

1.4; ABA Comm. on Ethics & Pro. Resp., Formal Op. 489 (2019)).

To the extent this claim rests on a contention that the March 25, 2023 email should have included additional information, it fails because "[Section] 43(a) of the Lanham Act does not impose an affirmative duty of disclosure." Casper Sleep, Inc. v. Mitcham, 204 F. Supp. 3d 632, 638 (S.D.N.Y. 2016). See, e.g., Agency Dev., Inc. v. Med Am. Ins. Co., 310 F. Supp. 2d 538, 547 (W.D.N.Y. 2004) ("Plaintiff's proposed claim must fail because it cannot base a Lanham Act claim on the defendants' failure to disclose a fact."); Int'l Paint, Co., Inc. v. Grow Grp., Inc., 648 F.Supp. 729, 731 (S.D.N.Y. 1986)("The failure of the corporate defendant to list various ingredients does not constitute a Lanham Act violation."); Clark Consulting, Inc. v. Fin. Sols. Partners, LLC, No. 05-cv-6296 (SAS), 2005 WL 3097892, at *3 (S.D.N.Y. Nov. 17, 2005) ("The [Lanham] Act imposes no affirmative duty of disclosure . . . and a claim cannot be based on the failure to disclose a fact.").

Insofar as this claim rests on the contention that the March 25, 2023 email created a misleading impression, the plaintiffs also fail to state a claim upon which relief may be granted. The plaintiffs acknowledge that "it is true that the communications were sent to then-current clients of Zaiger LLC." Pls. Opposition to Zaiger Defs. at 26. "[T]he touchstone of whether a defendant's actions may be considered

'commercial advertising or promotion' under the Lanham Act is that the contested representations are part of an organized campaign to penetrate the relevant market." <u>Fashion Boutique of Short Hills, Inc.</u>, 314 F.3d at 57. As the Zaiger Defendants contend, the factual allegation that there was "a single message to existing [law firm] clients to inform them of personnel changes to their legal team," Zaiger Defs. Memorandum at 29, does not show that there was an "organized campaign to penetrate the relevant market." <u>Fashion Boutique of Short Hills, Inc.</u>, 314 F.3d at 57. Nothing about this communication suggests that it was part of an organized campaign to recruit new clients. <u>Cf. First Health Grp. Corp. v. BCE Emergis Corp.</u>, 269 F.3d 800, 803–04 (7th Cir. 2001) ("Advertising is a form of promotion to anonymous recipients"); <u>Koenig v. Aetna Life Ins.</u>, No. 4:13-cv-359 (KMH), 2015 WL 6473351, at *10 (S.D. Tex. Oct. 27, 2015) ("[T]hese alleged private communications to existing clients or plan members . . . would not constitute actionable 'commercial advertising or promotion' within the meaning of the Lanham Act").

Moreover, while "a lawyer's violation of a Rule [of Professional Conduct] may be evidence of breach of the applicable standard of conduct", "[v]iolation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal

duty has been breached." N.Y. Rules of Pro. Conduct Preamble ¶ 12.

Therefore, the Sixth Count fails to state a claim upon which relief can be granted.

## 2. **Tenth Count**

In the Tenth Count, the plaintiffs also bring a claim against the Zaiger Defendants for violation of 15 U.S.C. § 1125(a).

The plaintiffs claim that:

> Zaiger LLC and Jeff Zaiger's actions described above and specifically, without limitation, their false advertising to current and prospective clients through the Website and the March 25, 2023, communication, regarding their intent to prosecute clients' claims constitute unfair competition and false advertising in violation of 15 U.S.C. § 1125(a).
> Consumers are likely to be misled and deceived by Zaiger LLC's and Jeff Zaiger's misrepresentations and material omissions into believing that by hiring Zaiger LLC and Jeff Zaiger or deciding not to pursue their cases with new counsel (which they have the right to do at any time), they will have hired counsel that will pursue their cases through judgment.
> Upon information and belief, Zaiger LLC and Zaiger have a premeditated intent to abandon their clients if a settlement is not achieved immediately upon filing an arbitration. Upon information and belief, Black Diamond and Deckoff have insisted that this premeditated plan to abandon the clients is a condition of funding and that Black Diamond will withdraw its legal work, economic support, and support of Zaiger LLC's infrastructure unless Zaiger LLC and Zaiger comply. Zaiger has previously indicated that he cannot disobey orders from Black Diamond under these circumstances.

Second Am. Compl. ¶¶ 353-55 (cleaned up).

To the extent that the claim in this count is based on the

March 25, 2023 email to existing clients, it fails to state a claim upon which relief can be granted for the reasons discussed above with respect to the third basis for the claim in the Sixth Count.

To the extent that this claim is based on communications to prospective clients through the website, it also fails to state a claim upon which relief can be granted. In Lexmark Int'l, Inc., the Supreme Court held that "to come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." 572 U.S. at 131-32. But the allegations related to the representation on the website that "Zaiger LLC will negotiate, and if necessary litigate, your claim," Second Am. Compl. ¶ 256, do not state or suggest how the representation results in injury to a commercial interest of Bucher or Bucher Law in reputation or sales. This count merely contains a conclusory assertion that "[a]s an actual and proximate result of Zaiger LLC's and Jeff Zaiger's willful and intentional actions, the Bucher Parties have suffered damages . . . " Id. ¶ 324. Cf. Time Warner Cable, Inc. v. DIRECTV, Inc., 497 F.3d 144, 162 (2d Cir. 2007)("[I]n the case of a 'misleading, non-comparative commercial[ ] which tout[s] the benefits of the product advertised but ma[kes] no direct reference to any competitor's product,' the injury 'accrues equally to all

competitors; none is more likely to suffer from the offending broadcasts than any other'" (citation omitted)). Nowhere in the Second Amended Complaint do the plaintiffs allege that any client has withheld trade, or indicated the client will withhold trade, from the plaintiffs because of this statement on the website. See Ortho Pharm. Corp. v. Cosprophar, Inc., 32 F.3d 690, 694 (2d. Cir. 1994) ("In order to establish standing to sue under this statute, a plaintiff must demonstrate a reasonable interest to be protected against the advertiser's false or misleading claims, and a reasonable basis for believing that this interest is likely to be damaged by the false or misleading advertising" (internal quotation marks and citations omitted)). See also Impax Media, Inc. v. N.E. Advert. Corp., No. 17-cv-8272 (RWS), 2018 WL 3962841, at *10 (S.D.N.Y. Aug. 17, 2018) ("generic puffery is not actionable as false advertising").

Therefore, the Tenth Count fails to state a claim upon which relief can be granted.

### 3. **Twelfth Count**

In the Twelfth Count, the plaintiffs bring a claim against the Black Diamond Defendants for violation of 15 U.S.C. § 1125(a), specifically, a claim for contributory false advertising.

The plaintiffs claim that:

Zaiger LLC and Jeff Zaiger have engaged in unfair

competition and false advertising in violation of 15 U.S.C.
§ 1125(a) by, among other things, falsely advertising to
consumers their intent to prosecute their claims in the
Steam Arbitrations through arbitral award.

Upon information and belief, Zaiger LLC and Zaiger
have a premeditated intent to abandon their clients if a
settlement is not achieved immediately upon filing an
arbitration. Upon information and belief, Black Diamond and
Deckoff have insisted that this premeditated plan to
abandon the clients is a condition of funding and that
Black Diamond will withdraw its legal work, economic
support, and support of Zaiger LLC's infrastructure unless
Zaiger LLC and Zaiger comply. Zaiger has previously
indicated that he cannot disobey orders from Black Diamond
under these circumstances.

Black Diamond LLC and Deckoff induced Zaiger and
Zaiger LLC to engage in false advertising by, among other
things: (i) directing Zaiger and Zaiger LLC to cease
representing clients in the Steam Arbitration if Valve does
not immediately settle; (ii) making Zaiger and Zaiger LLC
agree to the foregoing as a condition of funding; and (iii)
nonetheless insisting that Zaiger and Zaiger LLC continue
to solicit prospective clients.

Based on the direction of Black Diamond LLC and
Deckoff, Zaiger and Zaiger LLC solicited clients (and
continue to do so) and advertised to current clients to be
retained for the Steam Arbitrations without informing such
clients and prospective clients that Zaiger and Zaiger LLC
had no intention to fully pursue their claims.

Second Am. Compl. ¶ 367-69 (cleaned up).

A claim of contributory false advertising must be based on
an underlying instance of false advertising, i.e., a "primary
violation[]." Societe Des Hotels Meridien v. LaSalle Hotel
Operating P'ship, L.P., 380 F.3d 126, 133 (2d Cir. 2004). Where,
as here, the plaintiffs failed to allege facts that state a
claim that the Zaiger Defendants engaged in a primary violation,
the plaintiffs' claim that the Black Diamond Defendants induced

-26-

any such violation by the Zaiger Defendants similarly fails.

Therefore, the Twelfth Count fails to state a claim upon
which relief can be granted.

B. **Remaining Counts**

The remaining counts in the Second Amended Complaint are
state law claims. With respect to jurisdiction over the state
law claims, the Second Amended Complaint states that the court
"has supplemental jurisdiction over the state law claims
asserted because they are part of the same case or controversy
as the federal claim over which this Court has jurisdiction. 28
U.S.C. § 1367(a)." Second Am. Compl. ¶ 16. Although a district
court has supplemental jurisdiction under 28 U.S.C. § 1367 over
state law "claims that are so related to claims in the action
within [the court's] original jurisdiction that they form part
of the same case or controversy," the court "decline[s] to
exercise supplemental jurisdiction" over the plaintiffs' state
law claims because at least one of the claims appears to
"raise[] a novel or complex issue of [s]tate law", involving the
applicable rules of professional responsibility (see the Eighth
Count, a claim by Bucher against Zaiger LLC for violation of
wrongful termination of his employment in violation of public
policy), and the court "has dismissed all claims over which it
has original jurisdiction." 28 U.S.C. § 1367(c).

## IV. CONCLUSION

For the reasons set forth above, the Motion of Defendants Zaiger LLC and Jeffrey Zaiger to Dismiss the Second Amended Complaint (ECF No. 59) and Defendants Black Diamond Capital Management, LLC and Stephen Deckoff's Motion to Dismiss Second Amended Complaint (ECF No. 61) are hereby GRANTED. The Sixth Count and the Tenth Count (which are against Zaiger LLC and Jeffrey H. Zaiger) are dismissed with prejudice; the Twelfth Count (which is against Black Diamond Capital Management, LLC and Stephen Deckoff) is dismissed with prejudice; and the court declines to exercise supplemental jurisdiction over First, Second, Third, Fourth, Fifth, Seventh, Eighth, Ninth, Eleventh, and Thirteenth Counts.

The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 24th day of February 2025, at Hartford, Connecticut.

_____
          /s/
        Alvin W. Thompson
United States District Judge
